2026 IL App (4th) 260091-U

NOS. 4-26-0091, 4-26-0092, 4-26-0093, 4-26-0094, 4-26-0095 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2026
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* Ch. C., a Minor | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Sangamon County |
| Petitioner-Appellee, | ) No. 24JA13 |
| v.　　　(No. 4-26-0091) | ) |
| Charlene C., | ) |
| Respondent-Appellant). | ) |
| | ) |
| | ) No. 24JA14 |
| *In re* R.C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
| Petitioner-Appellee, | ) |
| v.　　　(No. 4-26-0092) | ) |
| Charlene C., | ) |
| Respondent-Appellant). | ) |
| | ) |
| | ) No. 24JA15 |
| *In re* Car. C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
| Petitioner-Appellee, | ) |
| v.　　　(No. 4-26-0093) | ) |
| Charlene C., | ) |
| Respondent-Appellant). | ) |
| | ) |
| | ) No. 24JA16 |
| *In re* Cal. C., a Minor | ) |
| | ) |
| (The People of the State of Illinois, | ) |
| Petitioner-Appellee, | ) |
| v.　　　(No. 4-26-0094) | ) |
| Charlene C., | ) |
| Respondent-Appellant). | ) |
| | ) |
| | ) |

| | No. 24JA17 |
|---|---|
| *In re* A.C., a Minor | |
| | |
| (The People of the State of Illinois, | |
|       Petitioner-Appellee, | |
|       v.      (No. 4-26-0095) | Honorable |
| Charlene C., | Karen S. Tharp, |
|       Respondent-Appellant). | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court's unfitness and best-interest findings were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Charlene C., appeals from the trial court's judgments terminating her parental rights to her children, Ch. C. (born July 2012), R.C. (born December 2013), Car. C. (born July 2016), Cal. C. (born July 2015), and A.C. (born March 2018). On appeal, respondent argues the court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. For the reasons that follow, we affirm the trial court's judgments.

¶ 3    I. BACKGROUND

¶ 4    The parental rights of the minors' father, Charles C., were also terminated during the proceedings below. He is not, however, a party to this appeal. The following is gleaned from the record as it relates to respondent.

¶ 5    In August 2025, the State filed motions to terminate respondent's parental rights to the minors. In the motions, the State alleged respondent was an unfit parent in that, in pertinent part, she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) failed to make reasonable efforts to

- 2 -

correct the conditions which were the basis for the removal of the minors within a nine-month period following the minors' June 26, 2024, adjudications of neglected, namely June 26, 2024, to March 26, 2025 (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward the return of the minors within a nine-month period following the minors' adjudications of neglected, namely, June 26, 2024, to March 26, 2025 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Illinois Department of Children and Family Services (DCFS) as guardian, with the power to consent to adoption.

¶ 6 In January 2026, the trial court conducted a two-day hearing on the State's motions to terminate parental rights. During the fitness portion of the hearing, the court took judicial notice of certain orders entered in the minors' cases, as well as orders entered in respondent's criminal cases. It heard testimony from the caseworker assigned to the minors' cases and respondent. It also received (1) a January 2025 order of probation, (2) a transcript setting forth courses completed by respondent between September and November 2025, while she was incarcerated, and (3) a November 2025 letter indicating respondent had been attending Alcoholics Anonymous meetings while incarcerated. The following is gleaned from the evidence presented.

¶ 7 In January 2024, the minors were taken into the temporary care of DCFS due to their exposure to domestic violence between their parents.

¶ 8 In March 2024, services were recommended to respondent based upon her participation in an integrated assessment. The recommended services included (1) completing programs for domestic violence, substance abuse, mental health, anger management, and parenting; (2) complying with her ongoing legal obligations; and (3) cooperating with the agency assigned to monitor the welfare of the minors. Respondent was advised engagement and compliance with the recommended services were vital to have the minors returned to her care.

¶ 9        In June 2024, there was an incident of domestic violence between respondent and the minors' father. Respondent was the reported victim. That same month, the minors were adjudicated neglected due to their exposure to the domestic violence between their parents.

¶ 10        In July 2024, the minors were made wards of the court, and respondent signed consents for the recommended services. After completing the consents, respondent was referred to the recommended service programs.

¶ 11        During a July 2024 case review, respondent was rated satisfactory with respect to complying with her legal obligations. She rated unsatisfactory on all other service recommendations. Respondent was not engaged in the recommended service programs. The caseworker learned of the June 2024 incident of domestic violence through a records search, not through disclosure by respondent. The caseworker described respondent's attendance at visits with the minors as "sporadic." The caseworker further indicated the visits which respondent attended went "poorly." The caseworker described an incident related to a visit scheduled for that month. Respondent asked to have the visit take place at Chuck E. Cheese to celebrate Cal. C.'s birthday, which the agency denied due to respondent's lack of compliance with services. The agency suggested respondent have a party for Cal. C. at the agency's office. After protesting to the unfairness of the situation, respondent canceled the visit and did not see Cal. C. for his birthday.

¶ 12        In January 2025, respondent was rated unsatisfactory on all her service recommendations during a case review. She had not engaged in the recommended service programs and had not attended visits with the minors since July 2024. There were also two police reports of domestic violence between the minors' parents, as well as police reports of separate criminal activity by respondent. Respondent testified the allegation she struck the minors' father with a frying pan was a lie. The order of probation entered that month provided respondent was to

have no contact with the minors' father. Two days after she was released from jail, there was a report of domestic violence in which respondent was alleged to have attempted to stab the minors' father with a pen while he was at the hospital. Respondent's visits with the minors were suspended. Respondent was told she would have to engage in counseling before visits were reinstated.

¶ 13　　　　Between January and March 26, 2025, respondent engaged in counseling. Also during this period, she was arrested for criminal offenses and probation violations. She participated in drug court but later withdrew her participation. Respondent testified she withdrew from drug court because it was interfering with her progress on the recommended services. She also testified she did not believe she needed the treatment recommended in drug court. Respondent had not completed any of the recommended service programs as of March 26, 2025.

¶ 14　　　　In June 2025, respondent's visits with the minors were reinstated due to her engagement in counseling. She attended three visits with the minors throughout 2025.

¶ 15　　　　In July 2025, the caseworker conducted a case review. Respondent rated unsatisfactory on all her service recommendations. She was not engaged in the recommended service programs.

¶ 16　　　　In the fall of 2025, respondent attended in-person Alcoholics Anonymous meetings while incarcerated and engaged in various virtual courses offered by the jail. The courses were prerecorded and available through a tablet. The courses addressed topics including domestic violence, substance abuse, mental health, and parenting. Respondent testified to the knowledge and skills she learned from the courses and her ability to use that knowledge and those skills after she was released from jail.

¶ 17　　　　Respondent informed the minors' caseworker about the courses available to her through the jail. The caseworker testified the courses did not satisfy the service recommendations,

which she explained to respondent. Respondent acknowledged this was explained to her. The caseworker was examined about the qualifications for a course to meet the service recommendations. The caseworker indicated she was uncertain of the requirements for approval.

¶ 18 Also in the fall of 2025, respondent was in a new romantic relationship. Respondent acknowledged having a "really bad argument" with her paramour in December 2025, which involved police contact.

¶ 19 Respondent largely refused to submit to requested drug screenings. Respondent stated her refusal was based upon her religious beliefs. She declined to provide the minors' caseworker with information about her religion or its prohibition on submitting urine samples for screening. At the fitness hearing, respondent acknowledged she was unaware of a teaching prohibiting her from providing urine samples for screening and refused to otherwise answer questions about her religion. She also acknowledged she agreed to participate in drug court knowing it would require samples for screening. She testified she agreed to drug court because she believed it would help her situation. In total, respondent submitted to 3 of the 30 requested drug screens. The three drug screens occurred between July 2025 and January 2026, all of which were positive for alcohol. Respondent acknowledged struggling with alcohol use.

¶ 20 Respondent's primary address since the minors were taken into DCFS care was the local jail. When she was not in jail, she would stay with friends or family but would not provide the minors' caseworker with the addresses.

¶ 21 Respondent reported being self-employed, with her own cleaning business. The minors' caseworker was unable to verify the business or income therefrom. Respondent testified she obtained sufficient income to support herself and her household.

¶ 22 With respect to the visits which respondent attended, the minors enjoyed spending

time with respondent. Respondent, at times, struggled to parent the minors when confronted with their behaviors. Respondent's inconsistent attendance at visits negatively affected the minors. Respondent maintained contact with the minors by telephone.

¶ 23 Respondent testified she and the minors' father were no longer in a romantic relationship but communicated daily about the minors. She also testified they had recently spoken about getting back together for the benefit of the minors.

¶ 24 Respondent testified she completed a mental-health assessment while incarcerated, which recommended outpatient treatment. Respondent acknowledged she had not engaged in the recommended treatment. She believed she was in good mental health.

¶ 25 As of the date of the fitness hearing, respondent had not engaged in the recommended service programs. Respondent testified she believed the coursework she completed while incarcerated satisfied the service recommendations.

¶ 26 Based on this information, the trial court found respondent was an unfit parent for the reasons alleged in the State's motions to terminate parental rights.

¶ 27 During the best-interest portion of the hearing, the trial court took judicial notice of the evidence presented during the fitness portion of the hearing, as well as a modified order of protection, and heard testimony from the minors' caseworker. The court also received photographs of the minors and respondent. The following is gleaned from the evidence presented.

¶ 28 Car. C. and R.C. had been placed with their maternal grandmother for over a year. Their older sibling, as well as the grandmother's teenage daughter, also resided in the household. The children were doing well in their placement, and the placement met their needs. The grandmother was willing to provide the children with permanency through guardianship. She preferred guardianship but was considering adoption; a legal screening was pending. The children

were bonded to their grandmother and relied upon her for their needs.

¶ 29		Ch. C., Cal. C., and A.C. had been placed with their paternal grandmother for over a year. The grandmother's paramour and an adult grandchild also resided in the three-bedroom household, where the children shared a room. The children were doing well in their placement, and the placement met their needs. The grandmother was willing to provide the children with permanency through adoption. The grandmother was also willing to care for the other minors but believed her home was too small to do so. The children were bonded to their grandmother and relied upon her for their needs.

¶ 30		The minors participated in sibling visits each month. The grandmothers, who lived approximately a 10-minute drive from each other, were open to continuing the sibling visits. They were also open to continuing relationships between the minors and their parents. The grandmothers did not get along well, but the agency was working to facilitate a working relationship to benefit the minors. The grandmothers were also interested in seeing their grandchildren who were not placed with them. The grandmothers had expressed a willingness to overcome their differences.

¶ 31		The paternal grandmother had previously obtained an order of protection against respondent. In July 2025, the order was modified by agreement to allow respondent to call the grandmother's phone to communicate with the minors.

¶ 32		The minors were bonded to respondent and stated they missed her. Respondent was allowed monthly visits with the minors.

¶ 33		Respondent's residence was not known to the minors' caseworker.

¶ 34		The caseworker believed it was in the minors' best interests to terminate respondent's parental rights.

¶ 35		Based on this information, the trial court, after considering the statutory

best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)), found it would be in the minors' best interests to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights to the minors.

¶ 36 This appeal followed.

¶ 37                                     II. ANALYSIS

¶ 38 On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 39 We begin with respondent's challenge to the trial court's finding of unfitness. The State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 40 The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)). Section 1(D)(m)(ii) states, in pertinent part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." *Id.*

¶ 41 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

"encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007).

¶ 42　　　In this case, the relevant time period was June 26, 2024, to March 26, 2025. The evidence shows respondent failed to engage in most of the recommended service programs during this period. Additionally, she was involved in at least two incidents of domestic violence with the minors' father and committed separate criminal offenses. Respondent, in support of her position, cites the coursework she completed while incarcerated; however, that coursework was completed after the relevant period and, therefore, may not be considered in evaluating reasonable progress. See *id.* Given the information gleaned from the evidence presented, we find the trial court's unfitness finding based on respondent's failure to make reasonable progress toward the return of the minors is not against the manifest weight of the evidence.

¶ 43　　　As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70.

¶ 44　　　We turn next to respondent's challenge to the trial court's best-interest findings. The State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th)

190537, ¶ 33. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 45        When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2024). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 46        In this case, the evidence showed the minors had been placed with either their maternal or paternal grandmothers for over a year and their needs were being met in their placements. The placements allowed for continued sibling interactions, and the grandmothers expressed a willingness to facilitate those interactions. Conversely, respondent was not engaged in, nor did she complete, most of the recommended service programs, and she had recently been involved in another incident of domestic violence. Furthermore, she had missed visits, which negatively affected the minors. Respondent, in support of her position, emphasizes questions remain as to the stability and permanence of the minors' placements; however, those questions do not preclude a finding that terminating her parental rights would be in the minors' best interests. Given the information gleaned from the evidence presented, we conclude the court's finding it was in the minors' best interests to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 47                            III. CONCLUSION

¶ 48        For the reasons stated, we affirm the trial court's judgments.

¶ 49        Affirmed.